400 So.2d 117 (1981)
DEPENDABLE AIR CONDITIONING AND APPLIANCES, INC., Appellant,
v.
OFFICE OF TREASURER AND INSURANCE COMMISSIONER, Appellee.
No. 80-707.
District Court of Appeal of Florida, Fourth District.
June 17, 1981.
*118 Thomas J. McGovern, Fort Lauderdale, for appellant.
Deborah A. Getzoff, Dept. of Insurance, Tallahassee, for appellee.
DOWNEY, Judge.
This is an appeal from a final order of the Insurance Commissioner, which order adopted the findings of an administrative hearing officer and denied appellant Dependable Air Conditioning and Appliance's petition for an order that Dependable was entitled to be licensed as a warrantor under Section 634.401(5), Florida Statutes (1979).
Dependable is a service warranty association licensed under Chapter 634, Florida Statutes (1979), and has been engaged in the sale of warranty contracts on major appliances since approximately 1970. In 1977 the Legislature enacted Chapter 77-339, Laws of Florida (codified as Chapter 634, Part II, Florida Statutes (1977)), requiring associations selling warranty contracts on major appliances to post bonds and furnish evidence of solvency. However, the law was so restrictive that few small operators could comply with its requirements. The Legislature therefore amended Chapter 634 in 1978, resulting in Dependable's operation being removed from Part II of Chapter 634 to Part III thereof. After the amendment Part II regulated warranties on appliances sold in conjunction with the sale of realty (see Section 634.301(3)), while Part III regulated the sale of warranties on consumer products primarily used for personal, family, or household purposes (see Section 634.401(4)). Sellers of service warranties must be licensed by the Department of Insurance. Section 634.403. A condition precedent to issuance of a license is the posting of a bond the amount of which depends upon whether the applicant is a warrantor or warranty seller. Section 634.405. A warrantor is a person engaged in the sale of service warranties deriving 50% or less of its gross income from the sale of service warranties. Section 634.401(5). A warranty seller is a person engaged in the sale of service warranties deriving more than 50% of its gross income from such sales. Section 634.401(6). A warrantor which has less than $300,000 of gross written premiums must post a bond equal to 50% of the gross premiums or $50,000, whichever is less. Section 634.405(1)(a)2. A warranty seller (licensed under Part II prior to 1978) is required to post a bond of $75,000 by October 1, 1978, and $100,000 by October 1, 1979. Section 634.405(1)(b).
Upon application for renewal of its license, the Department advised Dependable it would be required to post a bond in the amount of $100,000 because it derived more than 50% of its gross income from the sale of warranties on tangible personal property. However, Dependable contended that a large percentage of its warranties are on appliances which were no longer tangible personal property but rather were fixtures by virtue of attachment and incorporation into real property. Therefore, Dependable argued that the amount of the bond required of it was $50,000.
*119 To resolve the conflicting positions of Dependable and the Department an administrative hearing was held before a hearing officer, who filed a recommended order finding in pertinent part that: (a) Dependable was a service warranty association; (b) the warranties sold by Dependable were not sold in connection with the sale of realty; (c) Dependable had less than $300,000 of gross income from the sale of all warranties in force; (d) more than 50% of Dependable's gross income was from the sale of warranties; (e) most of the warranties sold by Dependable were for major appliances attached to realty; and (f) among the appliances for which warranties were sold by Dependable were air conditioning and heating systems, washers, dryers, refrigerators, stoves, and dishwashers. The hearing officer concluded that Dependable was a warranty seller within the meaning of Section 634.405 because the bulk of the appliances upon which Dependable sold warranties, while affixed to realty were not a part thereof under the law of fixtures, but rather were consumer products and were tangible personal property within the meaning of Chapter 634 and that Dependable was required to post a $100,000 deposit in order to obtain a license. The hearing officer's recommended order was adopted by the Insurance Commissioner in a final order.
On appeal, Dependable contends that the Commissioner erred in confirming the hearing officer's recommended order because 1) the statute classifying warrantors and warranty sellers differently is unreasonable; 2) major home appliances attached to the realty lose their character as personal property; and 3) the determination that appliances attached to realty are not fixtures constitutes the promulgation of an invalid administrative rule.
Dependable's second point, having to do with the appliances as tangible personal property, will be treated first since it is the only point of consequence on this appeal.
The law of fixtures is somewhat amorphous. The attachment of a chattel to realty in one instance may result in its becoming a part thereof, yet in another situation it may retain its character as tangible personal property. The unsettled nature of fixtures is described thusly:
Fixtures are a species of property which lies along the dividing line between real and personal property. To decide on which side of the line certain items of property belong is often a difficult question. The term "fixtures" is generally used in reference to some originally personal chattel which has been actually or constructively affixed either to the soil itself or to some structure legally a part of such soil. It has been variously defined as denoting an article which was once chattel, but which, by being physically annexed or affixed to the realty by someone having an interest in the soil, has become accessory to it and a part and parcel of it; as signifying something so attached to the realty as to become, for the time being, a part of the freehold, as contradistinguished from a mere chattel; as something so annexed to the freehold that it cannot be removed without injury to the freehold. 14 Fla.Jur., Fixtures § 2, pp. 390-391; footnotes omitted.
The usual tests for determining whether a chattel has become a fixture are:
(1) annexation to the realty, either actual or constructive;
(2) adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and
(3) intention to make the article a permanent accession to the freehold. Id. at 391; footnote omitted.
Another factor which plays a significant role in this determination is whether an item can be removed without material or substantial injury to the freehold. Thus, there is a plethora of cases which hold for one reason or another that chattels attached to realty are not fixtures. For example, in White v. County Mortgagee Corp., 211 So.2d 254 (Fla. 3rd DCA 1968), the court held an elevator installed in a building retained its status as a chattel because it could be removed without damage to the premises. In GECC Leasing Corp. v. Berkshire *120 Life Insurance Co., 226 So.2d 231 (Fla. 4th DCA 1969), air conditioning units affixed to a building were held not to be fixtures. Similarly, in First Federal Savings & Loan Association of Okaloosa County v. Stovall, 289 So.2d 32 (Fla. 1st DCA 1974), hot water heaters, sinks and plumbing attachments, a dishwasher and disposal unit, a range hood and drop-in range installed in mortgaged premises were personal property. Finally, Zimring-McKenzie Const. Co. v. City of Pinellas Park, 237 So.2d 576 (Fla. 2d DCA 1970), held underground water and sewer systems installed in a subdivision were personal property.
Unlike the situation in many of those cases, our determination whether the appliances for which Dependable sells warranties are fixtures or personal property should not turn on the intention of the parties to the sale thereof or to the ease with which they might be removed from the realty. Rather, we believe, the Legislative purpose in passing this remedial legislation should control our decision. The obvious purpose of Part III, Chapter 634, Florida Statutes (1979), is to protect from fly-by-night operators who will be unwilling or unable to respond under warranty contracts consumers who buy service warranties in conjunction with the purchase of major appliances. The evidence adduced before the hearing officer demonstrates clearly that those concerns precipitated the enactment of this law. The experience of those sponsoring the Act showed that those businesses in which the sale of warranties constituted a large portion of the gross income posed greater risks to the consumer than those businesses whose income was generated mostly by the sale of consumer goods.
For these reasons we believe the record fully supports the findings of the hearing officer; thus, the Commissioner's adoption of those findings was correct.
Through its first point on appeal Dependable contends that the legislative classification of warrantors and warranty sellers contained in Section 634.405, Florida Statutes (1979), is arbitrary and unreasonable and denies Dependable equal protection. This issue was raised in the administrative proceedings below, but the hearing officer properly ruled that such a constitutional question could not be decided in an administrative proceeding. See Gulf Pines Memorial Park v. Oaklawn Memorial, 361 So.2d 695 (Fla. 1978); Adams Packing Ass'n. v. Florida Dept. of Citrus, 352 So.2d 569 (Fla. 2d DCA 1977). This raises the question whether a district court of appeal is the appropriate forum for making an initial ruling on the constitutionality of a statute pertinent to an administrative proceeding when the final action in that proceeding is properly brought before that court for review. The Second District Court of Appeal has held that it is not (see Coulter v. Davin, 373 So.2d 423 (Fla. 2d DCA 1979)), while the First District Court of Appeal has intimated that it is (see Rice v. Dept. of Health & Rehabilitative Services, 386 So.2d 844 (Fla. 1st DCA 1980). We agree with the Second District and rely upon the reasoning set forth in Coulter v. Davin, supra; cf. E.T. Legg & Co. v. Franza, 383 So.2d 962 (Fla. 4th DCA 1980).
Dependable contends in its final point that the Commissioner's adoption of the hearing officer's recommended order constitutes an invalid rule not properly promulgated pursuant to the Administrative Procedure Act. We reject that contention and adopt the Commission's response thereto. The Commissioner points out that the hearing below constituted the first challenge to the meaning of Section 634.401(4), which the Department of Insurance had theretofore considered to be a clear expression of the legislative intent; the hearing officer in the proceeding below, by quoting the following language from McDonald v. Dept. of Banking and Finance, 346 So.2d 569, 581 (Fla. 1st DCA 1977), properly recognized he was adjudicating an individual case that was refining incipient policy for the Department and not promulgating an administrative rule for the Department:
While the Florida APA ... requires rulemaking for policy statements of general applicability, it also recognizes the *121 inevitability and desirability of refining incipient agency policy through adjudication of individual cases. There are quantitative limits to the detail of policy that can effectively be promulgated as rules, or assimilated; and even the agency that knows its policy may wisely sharpen its purpose through adjudication before casting rules. (Footnote omitted.)
For the foregoing reasons the final order of Insurance Commissioner is affirmed.
HERSEY and HURLEY, JJ., concur.